IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JON C. SABIN,

     Plaintiff,     Civil Action No.
              7:12-CV-1370 (GLS/DEP)

  v.

ROBERT CAMP, Individually and as Justice of
the Town of Pierrepont,[1]

     Defendant.

_____

APPEARANCES:     OF COUNSEL:

FOR PLAINTIFF:

JON C. SABIN, *Pro Se*
P.O.  Box 530
South Colton, NY 13687

FOR DEFENDANT:

[NONE]


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

   Currently pending before me for review are a civil rights complaint

_____

   [1]  Based upon publically available information, the court has ascertained that the Justice is a defendant of Pierrepont.  The Clerk is directed to therefore amend the court's records to reflect this change.

and accompanying *in forma pauperis* ("IFP") application submitted for filing by *pro se* plaintiff Jon C. Sabin.[2]  For the reasons set forth below, I conclude that, while plaintiff has demonstrated his entitlement to proceed *in forma pauperis*, his complaint lacks sufficient allegations to permit the court to determine whether he has stated a plausible claim against the defendant, and therefore recommend that it be dismissed, with leave to replead.

I.    BACKGROUND

On August 31, 2012, the court received from plaintiff a complaint, accompanied by a motion for leave to proceed IFP.  Dkt Nos. 1, 2. Plaintiff's complaint names Robert Camp as the sole defendant, both individually, and in his official capacity as a Justice of the Town of Pierrepont.  Complaint (Dkt. No. 1) at ¶ 3. The only allegations set forth in plaintiff's complaint are that plaintiff is "a severe [epileptic] and cardiac patient" and that he is "prescribed a service dog" for his epilepsy.  *Id.* at ¶

_____

[2]      Plaintiff is a familiar litigant to this court, having filed six other lawsuits in this district.  Plaintiff was given leave to proceed *in forma pauperis* in each of the actions.  *See Sabin v. Arthurs, et al.*, No. 7:12-CV-1519 (N.D.N.Y. filed Oct. 3, 2012) (pending); *Sabin v. Nelson*, 7:12-CV-1373 (N.D.N.Y. filed Sept. 4, 2012) (pending); *Sabin v. Wozniak*, 7:00-CV-1875, 7:00-CV-1876, 7:00-CV-1877 (consolidated), (N.D.N.Y. filed Dec. 6, 2000) (dismissed pursuant to Rule 41 of the Federal Rules of Civil Procedure); *Sabin v. Knowlton, et al.*, 7:00-CV-1893 (N.D.N.Y. filed Dec. 8, 2000) (settled).

2

4.  As relief, plaintiff requests the entry of an order directing defendant and the Town of Pierrepont Justice Court to comply with the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq.* *Id.* at ¶ 7.

## II.   DISCUSSION

### A.   Plaintiff's IFP Application

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $350, must ordinarily be paid.  28 U.S.C. §§ 1914(a).  A court is authorized, however, to permit a litigant to proceed IFP if it is determined that he is unable to pay the required filing fee.[3]  28 U.S.C. § 1915(a)(1).

In this instance, having reviewed plaintiff's IFP application, I conclude that he meets the requirements for IFP status.  His application for leave to proceed *in forma pauperis* is therefore granted.

### B.   Sufficiency of Plaintiff's Complaint

#### 1.   Standard of Review

---

[3]      The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of New York*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e).  Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B). That section imposes a gatekeeping responsibility upon the court to determine whether an action may be properly maintained before permitting a plaintiff to proceed *in forma pauperis*.  *Id*.

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations.  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). However, the court also has an overarching obligation to determine that a

claim is not legally frivolous before permitting a plaintiff to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").[4],[5]

When reviewing a complaint under section 1915(e), the court looks

---

[4] "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court, as well as to discourage the waste of judicial resources." *Nelson v. Spitzer*, No. 07-CV-1241, 2008 WL 268215, *1 n.3 (N.D.N.Y. Jan. 29, 2008) (McAvoy, J.) (internal citations omitted).

[5] Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

to applicable requirements of the Federal Rules of Civil Procedure for guidance.  Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). The purpose of  Rule 8 "'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable.'"  *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D. D.C. 1977)) (italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

6

conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### 2. Individual Capacity Liability

Plaintiff's complaint asserts a claim against defendant Camp, both individually and in his capacity as a Pierreport Town Justice. It is well-established, however, that the ADA does not contemplate lawsuits against state and other municipal officials in their individual capacities. *Garcia V. SUNY Health Svcs. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001), *accord*, *Alster v. Goord,* 745 F. Supp. 2d 317, 337 (S.D.N.Y. 2010). I therefore recommend dismissal of plaintiff's claims against defendant Camp in his individual capacity.

### 3. Official Capacity Liability: Judicial Immunity

"It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities." *DuQuin v.*

*Kolbert*, 320 F. Supp. 2d 39, 40-41 (W.D.N.Y. 2004) (citing *Mireles v. Waco*, 502 U.S. 9, 10 (1991)); *see also Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true, however erroneous an act may have been, and however injurious its consequences were to the plaintiff. *Young*, 41 F.3d at 51. Judicial immunity, while broad, is not limitless; "a judge is immune only for actions performed in his judicial capacity." *DuQuin*, 320 F. Supp. 2d at 41.

In this instance, plaintiff's complaint contains no allegations from which the court may determine whether defendant Camp's alleged conduct giving rise to this action were in furtherance of his judicial capacity, rather than, for example, his administrative or investigative capacities. *See generally* Complaint (Dkt. No. 1). To reiterate, plaintiff's complaint contains only two allegations: that he is epileptic and a cardiac patient, and that he needs a service dog as a result of his epilepsy. *Id.* at ¶ 4. Because plaintiff's complaint fails to allege facts plausibly suggesting that defendant Camp's alleged conduct giving rise to this action was outside of his judicial capacity, I find that defendant Camp is protected from suit by judicial immunity. *See, e.g.*, *DuQuin*, 320 F. Supp. att 41 (dismissing the plaintiff's claims under 42 U.S.C. § 1983 and the ADA

against a town justice based on judicial immunity); *Badillo-Santiago v. Andreu-Garcia*, 70 F. Supp. 2d 84, 91 (D. P.R. 1999) (dismissing ADA claim against defendant-judge on the basis of judicial immunity because the court found that the judge's conduct fell under his judicial duties, rather than his administrative).  For this reason, I recommend that plaintiff's complaint be dismissed.

4.      The Merits of Plaintiff's ADA Claim Against Defendant Camp in his Official Capacity[6]

Title II of the ADA provides, in pertinent part, that

> [n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  The term "public entity" is defined to include "any department, agency, special purpose district, or other instrumentality of a

---

[6]      The court has construed plaintiff's complaint to assert a claim under Title II of the ADA.  To the extent that plaintiff's complaint could be construed as asserting a Title I ADA claim, I recommend dismissal of that claim, as well.  Plaintiff's complaint fails to allege any facts plausibly suggesting that he is, or was, an employee of defendant Camp at any time.  *See generally* Complaint (Dkt. No. 1); s*ee also Padilla v. New York State Dep't of Labor*, No. 09-CV-5291, 2010 WL 3835182, at *3 (S.D.N.Y. Sept. 13, 2010) ("To plead a Title I violation, a plaintiff must allege that (1) the defendant is subject to the ADA; (2) he is "disabled" within the meaning of the statute or perceived to be so by his employer; (3) he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (4) he was subject to an adverse employment action because of his disability.").

State or States or local government[.]"  42 U.S.C. § 12131(1)(B).  The United States Department of Justice has clarified, by regulation, that "a public entity should operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and useable by individuals with disabilities."  28 C.F.R. § 35.150(a).

To state a claim under Title II of the ADA, a plaintiff must allege "that (1) he or she is a qualified individual with a disability; (2) . . . the defendants are subject to the ADA; and (3) . . . plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities."  *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (internal quotation marks and alterations omitted).  The term "qualified individual with a disability" is statutorily defined to mean

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

In this action, plaintiff's complaint lacks sufficient factual allegations

to determine whether his claim can satisfy any or all of these

requirements.  For example, although plaintiff's complaint alleges that he

is an epileptic and a cardiac patient, this does not satisfy the first element

of the inquiry.  Complaint (Dkt. No. 1) at ¶ 4.  The term "disability" is

defined as follows:

> The term 'disability' means, with respect to an
> individual –
>
> > (A) a physical or mental impairment that
> > substantially limits one or more life activities of
> > such individual;
> >
> > (B) a record of such an impairment; or
> >
> > (C) being regarded as having such an
> > impairment (as described [elsewhere in the
> > statute].

42 U.S.C. § 12102(1).  A plaintiff's complaint must plead facts plausibly

suggesting that his alleged disability can meet all of the elements

contained in the ADA's definition of disability.  *See Thompson v. New York*

*City Dep't of Probation*, No. 03-CV-4182, 2003 WL 22953165, at *3 n.5

(S.D.N.Y. Dec. 12, 2003) ("Under the ADA definition of 'disability,' merely

pleading a physical impairment without specifying that it 'substantially

11

limits' a 'major life activity' may be insufficient to state a claim for relief.");

*see also Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (holding that, "[t]o establish a claim under [42 U.S.C. § 12102(1)(A)], a plaintiff must allege that he (1) has a[n] . . . impairment that (2) substantially limits (3) a major life activity," and dismissing plaintiff's complaint where it failed to allege, *inter alia*, "that his conditions substantially limited him in his performance of a life activity"); *Cox v. Civista Med. Ctr.*,16 F. App'x 185, 186 (4th Cir. 2001) (affirming district court's dismissal of the plaintiff's complaint because it failed to "demonstrate a disability" under 42 U.S.C. § 12102(1)(A) or (B)); *Ajuluchuku v. Macy's*, No. 12-CV-1855, 2012 WL 5464467, at *3 (E.D. Cal. Nov. 7, 2012) (dismissing plaintiff's amended complaint because it did "not allege facts establishing any of [the] elements [of 42 U.S.C. § 12102(1)]); *Detko v. Blimpies Rest.*, 924 F. Supp. 555, 557 (S.D.N.Y. 1996) (dismissing plaintiff's complaint for failure to state a claim where the complaint failed to allege that his speech impediment "*substantially* limits his speaking" (emphasis in original)). Here, plaintiff's complaint fails to include any allegations that plausibly suggest that the extent of plaintiff's alleged epilepsy or his cardiac condition "limits one or more major life activities."  42 U.S.C. § 12102(1).

Plaintiff's complaint is also devoid of factual allegations that plausibly suggest that his claim can satisfy the second and third elements of the relevant inquiry. Plaintiff has commenced this action against a town justice, in his individual and official capacities, but plaintiff's complaint states no allegations that plausibly suggest that, for example, defendant Camp is being sued in his official capacity as a conduit for suing the town itself, which is undoubtedly a public entity.[7] Moreover, the allegations of plaintiff's complaint fail to allege facts showing that he has been excluded from participation in services, programs or activities of the Pierreport Town Court or otherwise discriminated against on the basis of disability.

For all of these reasons, I recommend that plaintiff's complaint be dismissed.

C.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice

---

[7]    This is not to suggest that allegations to this effect would, in fact, survive initial review pursuant to 28 U.S.C. § 1915(e).

so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy").

In this instance, given that this case is in it's procedural infancy, I am compelled to recommend that plaintiff be given leave to file an amended complaint that cures the deficiencies identified in this report. As a result of the plaintiff's failure to include virtually any allegations in his complaint, I cannot make a finding that his claims appear to be fatal, nor can it be said that amendment of plaintiff's complaint would be a hopeless exercise. Accordingly, I recommend that plaintiff be given leave to file an amended complaint that includes sufficient factual allegations to permit the court to ascertain whether a plausible ADA claim has been asserted against the named-defendant in that amended pleading. To the extent any amended complaint again asserts a claim against defendant Camp in his official capacity, any amended complaint should demonstrate how he is an appropriate defendant in that capacity. However, I recommend against granting plaintiff leave to file an amended complaint that asserts a claim against defendant Camp in his individual capacity, since it is clearly

established law that individual liability is not actionable under the ADA.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should specifically allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing amended complaint, and must be a wholly integrated and

complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

III.    SUMMARY AND CONCLUSION

Plaintiff's complaint in this action, filed against a sitting town justice, is insufficiently stated to permit the court to conclude that he has stated a plausible ADA claim against that defendant in his individual or official capacities.  It is there hereby

RECOMMENDED that plaintiff's complaint be DISMISSED, without leave to replead his claims against defendant Camp in his individual capacity, but otherwise with leave to replead, pursuant to 28 U.S.C. § 1915(e)(B)(iii).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     February 5, 2013
           Syracuse, New York



Page 1

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))



Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.
Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).

Nov. 8, 1999.
*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000.[FN1]

> FN1. *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At*

> *2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. *§ 1915(e)(2)(B) Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes

and citation omitted); *see also Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." *Tapia–Ortiz,* 185 F.3d at 11.

2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Star v. Burlington Police Dep't,* 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii) of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

### 3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also, Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

### B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

### 1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

### 2. *Due Process*

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures—i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing sale of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

is liable to perish or to waste or to be greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546)]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

excessive or disproportionate").

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative defense on the claimant." *194 Quaker Farms Rd.*, 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable. *See* 28 U.S.C. § 2680(h); *see also Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see Gomez,* 171 F.3d at 796,

these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

D.Conn.,1999.

Aguilar v. U.S.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268215 (N.D.N.Y.)

(Cite as: 2008 WL 268215 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Dennis NELSON, Plaintiff,
v.
Eliot SPITZER; David Rock, Superintendent, Great
Meadow Correctional Facility; P. Brady, Correctional
Officer, Great Meadow Correctional Facility, Brian
Fischer; Richard Potter; J. Gumlaw; M. Cleveland; et
al., Defendants.
No. 9:07-CV-1241 (TJM)(RFT).

Jan. 29, 2008.
Dennis Nelson [FN1], Comstock, NY, pro se.

> FN1. Plaintiff has filed twenty-two other civil
> rights actions in this District. Several of
> plaintiff's filings relate to the medical condition
> of his leg. *See Nelson v. Lee, et al.,*
> 9:05-CV-1096 (NAM)(DEP); *Nelson v. Roberts,*
> 9:06-CV-0518 (GLS)(DRH); and *Nelson v.
> Smith, et al.,* 9:06-CV-0477 (GLS)(GHL).

**DECISION and ORDER**

THOMAS J. McAVOY, Senior District Judge.
**I. Background.**
*1 Presently before the Court is complaint, together
with an *in forma pauperis* application, filed by plaintiff
Dennis Nelson, who is presently incarcerated at the Great
Meadow Correctional Facility. Dkt. No. 1. Plaintiff also
requests injunctive relief. Dkt. No. 4.
As is more fully discussed below, plaintiff must pay
the $350.00 filing fee in full, and submit an amended
complaint, before this action may be permitted to proceed.

**II. Discussion.**

**A. *In forma pauperis* application**

Section 1915(e) directs that, when a plaintiff seeks to
proceed *in forma pauperis,* "(2) ... the court shall dismiss
the case at any time if the court determines that-... (B) the
action ... (i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief." 28 U.S.C. § 1915(e)(2)(B).[FN2] Thus, the court
has a responsibility to determine that a complaint may be
properly maintained in this district before it may permit a
plaintiff to proceed with an action *in forma pauperis.*[FN3]
*See id.* Although the court has the duty to show liberality
towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605,
606 (2d Cir.1990) (per curiam), and extreme caution
should be exercised in ordering *sua sponte* dismissal of a
pro se complaint before the adverse party has been served
and the parties have had an opportunity to respond,
*Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983),
there is a responsibility on the court to determine that a
claim is not frivolous before permitting a plaintiff to
proceed with an action *in forma pauperis. See e.g. Thomas
v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam)
(holding that a district court has the power to dismiss a
complaint *sua sponte* if the complaint is frivolous).

> FN2. In determining whether an action is
> frivolous, the court must look to see whether the
> complaint lacks an arguable basis either in law or
> in fact. *Neitzke v. Williams,* 490 U.S. 319, 325
> (1989).

> FN3. Dismissal of frivolous actions pursuant to
> 28 U.S.C. § 1915(e) is appropriate to prevent
> abuses of the process of the court, *Harkins v.
> Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as
> well as to discourage the waste of judicial
> resources. *Neitzke,* 490 U.S. at 327.

In the present case, the Court finds that plaintiff's
financial status would qualify him to file or "commence"
this action without prepaying in full the filing fee.
However, 28 U.S.C. § 1915(g), as amended, provides:

In **no event** shall a prisoner bring a civil action or

Not Reported in F.Supp.2d, 2008 WL 268215 (N.D.N.Y.)

(Cite as: 2008 WL 268215 (N.D.N.Y.))

appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.[FN4]

> FN4. The statute provides the imminent danger exception as "a safety valve for the 'three-strikes' rules to prevent impending harms, not those harms that had already occurred." *Malik v. McGinnis,* 293 F.3d 559, 562-563 (2d Cir.2002). "The exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct." *Johnson v. Barney,* 2005 WL 2173950, *1 (S.D.N.Y.2005). *See also, McFadden v. Parpan,* 16 F.Supp.2d 246, 247 (E.D.N.Y.1998) (imminent danger must be at the time plaintiff seeks to file the suit, not at the time of the alleged incidents).

28 U.S.C. § 1915(g) (emphasis added). Accordingly, the Court has a responsibility to determine that a plaintiff has not brought actions, on three or more occasions, which have been dismissed as frivolous, malicious or for failure to state a claim before permitting that plaintiff to proceed with an action *in forma pauperis. Id.*

A review of plaintiff's prior proceedings reveals that plaintiff does have three "strikes" and, thus, should not be permitted to proceed with this action *in forma pauperis. See Nelson v. Lee,* 9:05-CV-1096 (DEP)(NAM), Dkt. Nos. 44 and 47; *Nelson v. Hamel,* 9:07-CV-540 (GLS)(RFT), Dkt. No. 4; and *Nelson v. Conway,* No. 04-CV-6163CJS(Fe) (W.D.N.Y. Apr. 21, 2004) (Defendants' Motion (Dkt. No. 40) Ex. B). This Court has reviewed, and concurs with, the findings of Chief District Judge Mordue, District Judges Sharpe and Siragusa, and Magistrate Judge Peebles, with respect to the prior actions filed by this plaintiff and dismissed by the federal courts, as detailed in the aforesaid cases.[FN5]

> FN5. In *Nelson v. Lee,* 9:05-CV-1096,

Magistrate Judge Peebles stated that the "finding [in *Nelson v. Conway,* No. 04-CV-6163, that plaintiff had three strikes, was] entitled to preclusive effect ." *Nelson v. Lee,* No. 9:05-CV-1096, Dkt. No. 44 at 10 (citing *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 288-89)).

*2 Further, the Court has reviewed the complaint to determine whether plaintiff is under an imminent danger of serious physical injury. In his complaint, plaintiff alleges that staff at Great Meadow Correctional Facility are threatening to harm plaintiff if he tries to leave his cell for medical appointments to treat gangrene in his lower left leg.[FN6] Dkt. No. 1 at 5-6. Plaintiff has previously filed allegations regarding this injury, claiming denial of adequate medical treatment and alleging potential amputation of his left leg. *See Nelson v. Lee,* 9:05-CV-1096; *Nelson v. Nesmith,* 9:06-CV-1177;[FN7] *Nelson v. Conway,* No. 04-CV-6163CJS(Fe) (W.D.N.Y. Apr. 21, 2004). After reviewing the allegations contained in plaintiff's present complaint, the court concludes that plaintiff's claims do not fall within the "imminent danger" exception.

> FN6. In his request for injunctive relief, plaintiff indicates that the medical appointments are required to change the dressing on his lower left leg. Dkt. No. 4 at 5.

> FN7. A motion by the defendants seeking revocation of plaintiff's *in forma pauperis* status and conditional dismissal of his complaint under 28 U.S.C. § 1915(g), absent plaintiff's prepayment in full of the applicable filing fee, is currently pending in *Nelson v. Nesmith. See id.* at Dkt. No. 23.

**B. Complaint**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268215 (N.D.N.Y.)

(Cite as: 2008 WL 268215 (N.D.N.Y.))

*Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 95-CV-0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J .) (§ 1983 "is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.") (citation omitted). Parties may not be held liable under § 1983 unless it can be established that they have acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* No. 92-CV-4288, 1992 WL 380914 (S.D.N.Y., Dec. 10, 1992) (same) (citations omitted). State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* No. 95-CV-1500, 1995 WL 743719, *2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994)) (McAvoy, C.J.) (citation omitted). "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)) (other citations omitted).

Plaintiff's present complaint fails to allege **specific acts** by **specific defendants,** and thus fails to show personal involvement for most of the defendants in the alleged violation of plaintiff's constitutional rights. In fact, the only defendants mentioned in the body of the complaint are Brady and Gumlaw.[FN8] Dkt. No. 1 at 5-6.

FN8. As to these defendants, plaintiff merely alleges that they are threatening to harm him if he leaves his cell for medical appointments. Dkt. No. 1 at 5-6. Words alone, however violent, are not held to amount to an assault. *Hurdle v. Ackerhalt,* No.92-CV-1673, 1993 WL 71370, *1 (N.D.N.Y. Mar. 8, 1993) (McAvoy, D.J.) (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 n. 7 (2d Cir.1973), *cert. denied,* 414 U.S. 1033 (1973)). 42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse. *Alnutt v. Cleary,* 913 F.Supp. 160, 165-66 (W.D.N.Y.1996) (citations omitted). Mere allegations of threats and harassment do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983. *Hurdle,* 1993 WL 71370, *1 (citing *Morgan v. Ward,* 699 F.Supp 1025, 1055 (N.D.N.Y.1988) (Munson, J .); *Nelson v. Herdzik,* 559 F.Supp. 27 (W.D.N.Y.1983); *Williams v. Pecchio,* 543 F.Supp. 878 (W.D.N.Y.1982)).

Plaintiff's complaint is not sufficient to state a claim for the violation of plaintiff's constitutional or statutory rights by the named defendants. Accordingly, plaintiff's complaint is dismissed pursuant to 28 U.S.C. §§ 1915(e). In light of plaintiff's *pro se* status, **upon payment of the full filing fee of $350.00 for this action,** the Court will allow plaintiff an opportunity to file an amended complaint. Plaintiff's amended complaint must allege specific facts demonstrating that a case or controversy exists between plaintiff and the named defendants which plaintiff has a legal right to pursue and over which this Court has jurisdiction.

**\*3** Any such amended complaint, **which shall replace in its entirety the previous complaint filed by plaintiff,** must contain a caption that clearly identifies, by name, each individual that plaintiff is suing in the present lawsuit and must bear the case number assigned to this action. The body of plaintiff's complaint must contain a short and plain statement of facts in support of plaintiff's claims, set forth in sequentially numbered paragraphs. Each paragraph shall set forth one act of misconduct or wrongdoing about which plaintiff complains, and shall include (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred and (v) the nexus between such misconduct and plaintiff's civil and/or constitutional rights.

**C. Injunctive relief**

Plaintiff has requested that this Court issue a preliminary injunction against the defendants. Dkt. No. 4. However, as the Second Circuit noted in *Covino v. Patrissi,* 967 F.2d 73 (2d Cir.1992), in order to be granted a preliminary injunction, the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 268215 (N.D.N.Y.)

(Cite as: 2008 WL 268215 (N.D.N.Y.))

tipping decidedly toward the party seeking injunctive relief. *Id.* at 77 (affirming district Court's denial of inmate's request for preliminary injunction); *see also Roucchio v. LeFevre, 850 F.Supp. 143, 144 (N.D.N.Y.1994)* (McAvoy, C.J.) (adopting Report-Recommendation of Magistrate Judge that denied inmate's request for injunctive relief).

The Court has found that the complaint filed by plaintiff is insufficient and that an amended complaint must be filed for this action to proceed. Without a valid complaint, plaintiff can not possibly establish that his claim has a likelihood of success on the merits of the claim or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. Therefore, the Court denies plaintiff's motion for injunctive relief without prejudice to file a new motion after plaintiff has filed an amended complaint and it has been accepted by Order of this Court.[FN9]

    FN9. Plaintiff must also pay the full filing fee of $350.00 as directed above.

### III. Conclusion.

Plaintiff is advised that his failure to (1) prepay the $350.00 filing fee in full **and** (2) file an amended complaint, **within thirty (30) days** of the filing date of this Decision and Order, may result in the dismissal of this action, with prejudice. *See* Fed.R.Civ.P. 41(b).

WHEREFORE, it is hereby

ORDERED, that plaintiff's application to proceed *in forma pauperis* is DENIED, and it further

ORDERED, that should plaintiff wish to proceed with this action, he **must, within thirty (30) days** of the filing date of this Decision and Order, (1) prepay the $350.00 filing fee in full **and** (2) file an amended complaint which complies with the pleading requirements of the Federal Rules of Civil Procedure and the terms of this Decision and Order, and it is further

**\*4** ORDERED, that should plaintiff fail to comply with the terms of this Decision and Order, the Clerk return the file to this Court for further consideration, including

whether this action should be dismissed, with prejudice, pursuant to Rule 41(b), and it is further

ORDERED, that upon plaintiff's prepayment of the $350.00 filing fee in full **and** the filing of an amended complaint, this matter be returned to the Court for further review, and it further,

ORDERED, that plaintiff's motion for injunctive relief (Dkt. No. 4) is denied without prejudice for the reasons stated above, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff.

N.D.N.Y.,2008.

Nelson v. Spitzer
Not Reported in F.Supp.2d, 2008 WL 268215 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3835182 (S.D.N.Y.)

(Cite as: 2010 WL 3835182 (S.D.N.Y.))



Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

S.D. New York.
Jose (Joseph) A. PADILLA, Jr., Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF LABOR,
Defendant.
No. 09 Civ. 5291(CM)(RLE).

Sept. 13, 2010.
**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

McMAHON, District Judge.
### INTRODUCTION
**\*1** Plaintiff Jose Padilla ("Plaintiff") brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* against his former employer, defendant the New York State Department of Labor ("DOL" or "Defendant"). Plaintiff alleges that the DOL discriminated against him by not paying him during disability leave, and that when he filed internal complaints, it retaliated against him by instituting disciplinary proceedings and, ultimately, firing him. Defendant has moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Defendant's motion is granted.

### BACKGROUND

Plaintiff alleges that on June 7, 2004, he returned to work at the DOL after being absent "on leave, a period of disability," since November 2003. (Compl. at 8.) [FN1] He alleges that Defendant discriminated against him by refusing to pay him for the period of his leave running from March 25, 2004 through the date of his return; by bringing him up on disciplinary charges of unauthorized leave for that same period; and by transferring him to another unit upon his return.

> FN1. For purposes of this motion to dismiss, the Court assumes the truth of the allegations in Plaintiff's Complaint and the documents attached thereto.

Plaintiff filed an internal complaint of discrimination. He alleges that Defendant retaliated by engaging in hostile conduct and attempting to intimidate him so that he would not file further complaints. On November 15, 2004, Plaintiff filed a second internal complaint.

Plaintiff alleges that in the ten months after returning to work from his "leave for a period of disability" (*id.*), the DOL brought seven disciplinary charges against him, six of which were brought after he filed his second complaint of discrimination. He contested each disciplinary charge by filing grievances.

On February 16, 2006, the DOL terminated Plaintiff's employment. After receiving his Right to Sue Letter from the Equal Employment Opportunity Commission, Plaintiff timely commenced this action on May 19, 2009.

The Complaint does not specify under which Title(s) of the ADA Plaintiff's claims arise. The Court (like Defendant) construes the Complaint as asserting claims under Title I (employment discrimination) and Title V (retaliation). The Complaint seeks "such relief as may be appropriate, including injunctive orders, damages, costs, and attorney's fees." (*Id.* at 5.)

Pending before the Court is Defendant's motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6). The DOL argues that the Court lacks subject-matter jurisdiction over both of Plaintiff's claims because they are barred by Eleventh Amendment sovereign immunity, and that the Complaint fails to state a claim under Title I.

### DISCUSSION

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3835182 (S.D.N.Y.)

(Cite as: 2010 WL 3835182 (S.D.N.Y.))

## I. Standard of Review

In considering a motion to dismiss pursuant to Rule 12(b)(1) or 12(b)(6), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir.2008) (Rule 12(b)(1)); *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d Cir.2008) (Rule 12(b) (6)). However, jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison,* 547 F.3d at 170 (internal quotations and citations omitted). When deciding jurisdictional issues, the court "may consider evidence outside the pleadings." *Id.*

**\*2** To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly,* 550 U.S. at 556.) "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotations, citations and alterations omitted). Unless a plaintiff's well-pleaded allegations of fact have "nudged [its] claims across the line from conceivable to plausible, the plaintiff's] complaint must be dismissed." *Id .* at 570; *Iqbal,* 129 S.Ct. at 1950–51.

Finally, it is well established that where, as here, the plaintiff is *pro se,* his submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal quotations and citation omitted); *see Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) ("Even after *Twombly,* [courts] remain obligated to construe a *pro se* complaint liberally." (*citing Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam))).

## II. Title I Claim

Title I of the ADA prohibits discrimination against individuals with disabilities in the terms and conditions of their employment. *See* 42 U.S.C. § 12112(a). Plaintiff's Title I claim must be dismissed, both because it is barred by sovereign immunity, and because the Complaint fails to plead a "disability" within the meaning of the statute.

### A. Plaintiff's Title I Claim Is Barred by the Eleventh Amendment

The Eleventh Amendment provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In this Circuit, a finding that the defendant is entitled to sovereign immunity means the court lacks subject-matter jurisdiction. *See McGinty v. New York,* 251 F.3d 84, 101 (2d Cir.2001).

The Supreme Court has held that Eleventh Amendment immunity applies to a state sued by its own citizens, *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), and that it extends to state agencies, *see Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The sovereign immunity bar applies regardless of the nature of the relief sought. *See Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Pennhurst,* 465 U.S. at 100–01. There are three exceptions to the general rule that a state and its officers are immune from suit in federal court under the Eleventh Amendment: (1) a state may waive its Eleventh Amendment defense, *see Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.,* 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); (2) Congress may abrogate the states' sovereign immunity through the enactment of a statute, *see Kimel,* 528 U.S. at 80; and (3) pursuant to the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a "suit against a state *official* when that suit seeks only prospective injunctive relief," *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (emphasis added).

**\*3** Here, Plaintiff asserts a claim under Title I of the ADA against the DOL, which is an agency of the State of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3835182 (S.D.N.Y.)

(Cite as: 2010 WL 3835182 (S.D.N.Y.))

New York, *see Jackson v. N.Y. State Dep't of Labor,* No. 09 Civ. 6608, 2010 U.S. Dist. LEXIS 43200, at \*13 (S.D.N.Y. Apr. 26, 2010); *Rosquist v. N.Y. Univ. Med. Ctr.,* No. 97 Civ. 8566, 1998 U.S. Dist. LEXIS 15808, at \*41 (S.D.N.Y. Oct. 7, 1998). It is well established that Congress did not validly abrogate states' Eleventh Amendment immunity for claims brought under Title I of the ADA. *See Bd. of Trustees of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 368, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (holding that Title I can only "be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young"* ); *see also Darcy v. Lippman,* 356 F. App'x 434, 436 (2d Cir.2009). The *Ex parte Young* exception has no application here, as Plaintiff has not sued any individual state officers. *See, e.g., Santiago v. N.Y. State Dep't of Corr. Servs.,* 945 F.2d 25, 32 (2d Cir.1991); *Harris v. N.Y. State Educ. Dep't,* 419 F.Supp.2d 530, 534 (S.D.N.Y.2006). Nor is there any suggestion that the DOL has waived its Eleventh Amendment defense to Title I claims.

Plaintiff's affidavit in opposition to Defendant's motion offers only meritless procedural objections. He claims, for example, that Defendant failed to afford him proper notice of its motion in accordance with Local Rule 12.1. (*See* Aff. in Opp'n to Notice of Mot., Feb. 1, 2010 (Docket No. 11).) But Local Rule 12.1 only applies when a represented party moves to dismiss a *pro se* complaint and "refers in support of the motion to matters outside the pleadings," Local Civ. R. 12.1. The DOL has not referred to any matters outside Plaintiff's Complaint in moving to dismiss. Thus, Local Rule 12.1 does not apply. The other contentions in Plaintiff's affidavit are equally meritless.

Accordingly, Plaintiff's Title I claim is dismissed with prejudice for lack of subject-matter jurisdiction because it is barred by the Eleventh Amendment.

**B. The Complaint Fails to State a Claim Under Title I of the ADA**

Even if Plaintiff's Title I claim were not barred by sovereign immunity, it would fail because the Complaint does not adequately allege one of the most basic elements of a Title I claim—a disability. To plead a Title I violation, a plaintiff must allege that (1) the defendant is subject to the ADA; (2) he is "disabled" within the meaning of the statute or perceived to be so by his employer; (3) he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (4) he was subject to an adverse employment action because of his disability. *Brady v. Wal–Mart Stores, Inc.,* 531 F.3d 127, 134 (2d Cir.2008); *Giordano v. City of N.Y.,* 274 F.3d 740, 747 (2d Cir.2001). The ADA defines a disabled individual as one who has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1).

**\*4** Here, the Complaint makes only three vague, conclusory references to Plaintiff's purported disability: it alleges that Plaintiff was "on leave, a period of disability," and that he took leave for "a period of disability," (Compl. at 8–9.) Such allegations fall well short of pleading a "disability" within the meaning of the ADA. *See, e.g., Emmons v. City Univ. of N.Y.,* No. 09 Civ. 537, 2010 U.S. Dist. LEXIS 54140, at \*22–25 (E.D.N.Y. June 2, 2010); *Swiskey v. Palumbo,* No. 07 Civ. 6624, 2009 U.S. Dist. LEXIS 24832, at \*32–34 (S.D.N.Y. Mar. 9, 2009); *Kitchen v. Phipps Houses Groups of Cos.,* No. 08 Civ. 4296, 2009 U.S. Dist. LEXIS 12559, at \*12–13 (S.D.N.Y. Feb. 5, 2009).

Thus, Plaintiff's Title I claim, which is barred by the Eleventh Amendment, also fails for the independent reason that the Complaint does not sufficiently allege a disability.

**III. Title V Claim**

Title V of the ADA prohibits an employer from retaliating against an employee for engaging in activity protected by the statute's substantive provisions. *See* 42 U.S.C. § 12203. Defendant argues that Plaintiff's Title V claim, like his Title I claim, is barred by the Eleventh Amendment.[FN2]

> FN2. Defendant does not argue that Plaintiff's failure to plead a disability also warrants dismissal of his Title V claim, and with good reason, as an ADA plaintiff need not allege a disability to sustain a *retaliation* claim. *See*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3835182 (S.D.N.Y.)

(Cite as: 2010 WL 3835182 (S.D.N.Y.))

*Emmons v. City Univ. of N.Y.,* No. 09 Civ. 537, 2010 U.S. Dist. LEXIS 54140, at *25 (E.D.N.Y. June 2, 2010).

The Supreme Court has instructed that states' immunity to suits under the ADA is to be determined title by title. *See United States v. Georgia,* 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650. 156–59 (2006). Neither the Supreme Court nor the Second Circuit has decided whether Congress validly abrogated states' sovereign immunity in passing Title V of the ADA.

However, every district court in this Circuit to consider the issue has concluded that sovereign immunity bars Title V claims. *See, e.g., Emmons,* 2010 U.S. Dist. LEXIS 54140, at *21; *Moshenko v. State Univ. of N.Y. at Buffalo,* No. 07 Civ. 0116, 2009 U.S. Dist. LEXIS 125069, at *6–8 (W.D.N.Y. Sept. 16, 2009); *Chiesa v. N.Y. State Dep't of Labor,* 638 F.Supp.2d 316, 323 (N.D.N.Y.2009); *Salvador v. Lake George Park Comm'n,* No. 98 Civ.1987, 2001 U.S. Dist. LEXIS 23465, at *7–10 (N.D.N.Y. Mar. 28, 2001), *aff'd,* 35 F. App'x 7 (2d Cir.2002), *cert. denied,* 537 U.S. 1002, 123 S.Ct. 487, 154 L.Ed.2d 398 (2002). The district court in *Chiesa* reasoned as follows:

> Immunity under Title V has not yet been decided, but the past decisions on state employers suggest very limited liability to be appropriate.... If a state is immune from underlying discrimination, then it follows that the state must be immune from claims alleging retaliation for protesting against discrimination.

638 F.Supp.2d at 323; *see Salvador,* 2001 U.S. Dist. LEXIS 23465, at *9–10 ("There is no indication that Congress, in passing §§ 12203(a) and (b) of [Title V of] the ADA, was concerned with a pattern or practice of states interfering with others' compliance with the mandates of the ADA. Those sections of the ADA, therefore, cannot apply to the states for to do so would unlawfully abrogate their sovereign immunity.").

Outside of this Circuit, the only Court of Appeals that has addressed the issue reached the same conclusion. *See Demski v. Monteith,* 255 F.3d 986 (9th Cir.2001). In *Demski,* the Ninth Circuit "recognize[d] that [the Supreme Court's decision in] *Garrett* arose in the context of Title I, but ... nevertheless conclude[d] that the Court's holding necessarily applies to claims brought under Title V of the ADA, at least where, as here, the claims are predicated on alleged violations of Title I." *Id.* at 988–89 (noting that "[t]here is nothing in the ADA'S legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled," and that "[a]bsent a history of such evil by the states, Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims").

**\*5** Furthermore, multiple district courts in other circuits have also concluded that states and their agencies are immune from suit under Title V of the ADA. *See, e.g., Cisneros v. Colorado,* No. 03–cv–02122–WDM–CBS, 2005 U.S. Dist. LEXIS 40045, at *19–20 (D.Colo. July 22, 2005); *Shabazz v. Tex. Youth Comm'n,* 300 F.Supp.2d 467, 472–73 (D.Tex.2003); *Scott v. State Dep't of Workforce Dev.,* No. 06–C–308–C, 2006 U.S. Dist. LEXIS 93240, at *4–5 (W.D.Wise. Dec. 22, 2006). Indeed, the Court has located only three decisions finding that a Title V claim was *not* barred by sovereign immunity, and each of those decisions was based on circumstances not present here. In two of the three cases, the court found that the asserted Title V claim was not barred by sovereign immunity because it alleged retaliation predicated on underlying violations of *Title II,* not Title I. *See Demby v. Md. Dep't of Health & Mental Hygiene,* No. CCB–06–1816, 2009 U.S. Dist. LEXIS 12619, at *3–4 (D.Md. Feb. 13, 2009); *Sarkissian v. W. Va. Bd. of Governors,* No. 1:05CV144, 2007 U.S. Dist. LEXIS 32881, at *28–29 (N.D.W.Va. May 3, 2007). Plaintiff's Complaint here has nothing to do with Title II, which concerns disabled individuals' participation in and receipt of benefits from services, programs and activities of public entities. *See* 42 U.S.C. § 12132. In the third case, the court declined to apply sovereign immunity to a Title V claim because it was closely linked to *First Amendment* violations asserted in the plaintiff's complaint. *Roberts v. Pa. Dep't of Pub. Welfare,* 199 F.Supp.2d 249, 254 (E.D.Pa.2002).

This Court finds the reasoning of the Ninth Circuit in *Demski,* and of the district court decisions from this

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3835182 (S.D.N.Y.)

(Cite as: 2010 WL 3835182 (S.D.N.Y.))

Circuit cited above, to be persuasive. Accordingly, the Court concludes that Plaintiff's Title V claim is barred by the Eleventh Amendment. Plaintiff's Title V claim is therefore dismissed with prejudice for lack of subject-matter jurisdiction.

### CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion, and dismisses the Complaint with prejudice. The Clerk of the Court is directed to close this case.

S.D.N.Y.,2010.

Padilla v. New York State Dept. of Labor
Not Reported in F.Supp.2d, 2010 WL 3835182 (S.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2003 WL 22953165 (S.D.N.Y.), 27 NDLR P 106

(Cite as: 2003 WL 22953165 (S.D.N.Y.))

United States District Court,

S.D. New York.
Carletta THOMPSON, Plaintiff,
v.
NEW YORK CITY DEPARTMENT OF
PROBATION, Defendant.
No. 03 Civ.4182 JSR JCF.

Dec. 12, 2003.
*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

**\*1** Carletta Thompson brings this employment discrimination action *pro se,* alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* She claims that her employer, the New York City Department of Probation, discriminated against her on the basis of disability. The defendant has moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. For the reasons that follow, I recommend that the motion be denied.

*Background* [FN1]

> **FN1.** This summary of facts is taken from the Complaint and the plaintiff's statement attached to the Complaint and dated June 9, 2003. The Complaint was prepared on a form provided by the *Pro Se* Office of this Court. In considering the defendant's motion, I have also reviewed the facts alleged in the plaintiff's opposition papers, *see Ullah v. NYDOCS,* No. 00 Civ 9506, 2002 WL 1424590, at \*4 (S.D.N.Y. June 28, 2002) (*pro se* plaintiff's memorandum of law can be treated as part of complaint for purposes of deciding motion to dismiss), as well as the exhibits attached to the Complaint and to the plaintiff's opposition papers. *See Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) (complaint deemed to include all attachments to complaint and documents incorporated by reference).

The plaintiff alleges that her disabilities are carpal tunnel syndrome and other "back and neck" ailments. (Complaint ("Compl.") at 3). She alleges that the defendant: (1) failed to accommodate her disability, (2) subjected her to unequal terms and conditions of employment, (3) retaliated against her, and (4) refused to pay her medical bills for chiropractic services. (Compl. at 3).

On or about November 13, 1995, the plaintiff was hired by the New York City Department of Probation and assigned to the K.S.I.R. Unit [FN2] in Brooklyn. (Statement of Carletta Thompson dated June 9, 2003, attached to Complaint ("6/9/03 Statement"), at 1). The plaintiff worked without an "ergonomic workstation" at this assignment and experienced lower back pain. (6/9/03 Statement at 1). She also received "telephone harassment" from co-workers. (6/9/03 Statement at 1).

> **FN2.** The record does not indicate the full name of the K.S.I.R. Unit.

On or about January 6, 1997, the plaintiff was transferred to the Nova Ancora Program in Manhattan. (6/9/03 Statement at 1). She was diagnosed with carpal tunnel syndrome on March 11, 1998, and her employer subsequently provided her with two ergonomic chairs and a headset to accommodate her condition. (6/9/03 Statement at 1). The plaintiff requested a transfer to a unit that "would not further aggravated [sic][her] carpal tunnel syndrome." (6/9/03 Statement at 2). On April 9, 1998, she submitted a claim for workers' compensation benefits. (6/9/03 Statement at 2). The plaintiff received further telephone harassment from her co-workers. (6/9/03 Statement at 2).

On or about September 28, 1998, the plaintiff was transferred to Manhattan Family Intake & Services and assigned to the Investigation Unit. (6/9/03 Statement at 2). Her job required a significant amount of writing and

Not Reported in F.Supp.2d, 2003 WL 22953165 (S.D.N.Y.), 27 NDLR P 106

(Cite as: 2003 WL 22953165 (S.D.N.Y.))

sitting, which aggravated her carpal tunnel condition. (6/9/03 Statement at 2). Ms. Thompson submitted four transfer requests, each of which was denied. (6/9/03 Statement at 2). She was provided with an "Executive talk voice processing system" to use for her job. (6/9/03 Statement at 2). Beginning January 1, 1999, the plaintiff was assigned 14 cases per month, the same caseload carried by non-disabled employees. (6/9/03 Statement at 2). During this assignment, the plaintiff was called names such as "gay," "Jap," and "tramp," and on one occasion, the harassment began after the plaintiff complained about co-workers playing loud music. (6/9/03 Statement at 2). The plaintiff filed a charge with the New York State Division of Human Rights ("NYSHDR") on February 16, 1999. (6/9/03 Statement at 2).

**2** From October 8 to October 22, 1999, the plaintiff was absent from work due to severe headaches. (6/9/03 Statement at 3). She was denied use of her sick leave benefits for this period, and her paycheck was reduced to reflect the missed time. (6/9/03 Statement at 3). On November 9, 1999, the plaintiff filed a grievance through her union, but the grievance was subsequently denied. (6/9/03 Statement at 3–4).

On or about January 28, 2000, the plaintiff was transferred to Linden House in Brooklyn. (6/9/03 Statement at 3). At this assignment, she was referred to as "gay" and continued be harassed by co-workers. (6/9/03 Statement at 4). In May 2001, the plaintiff requested an ergonomic keyboard, which she later received. (6/9/03 Statement at 4–5). However, her ergonomic chair and a headset were stolen from her. (6/9/03 Statement at 5 & Exh. 5ii).

On or about January 4, 2002, the plaintiff was transferred to the Manhattan Alternative to Detention Program, then to the Kings Family Service, E.O.P. Unit[FN3] on or about December 9, 2002. (6/9/03 Statement at 5). On or about April 11, 2002, the plaintiff submitted a second claim for workers' compensation benefits, but she was denied payment for the medical bills of Dr. Handt, her chiropractor. (6/9/03 Statement at 5). In March 2003, the mouse for her ergonomic keyboard was stolen. (6/9/03 Statement at 5).

FN3. Again, there is no indication in the record what the acronym "E.O.P." stands for.

The NYSHDR determined that the plaintiff's rights had not been violated, and the United States Equal Opportunity Commission ("EEOC") adopted the state agency's findings and issued a right to sue letter on May 21, 2003. The plaintiff then submitted her complaint to this Court on or about June 9, 2003.

*Discussion*

In considering a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the court must accept as true all factual allegations in the complaint and must draw all inferences in favor of the plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164 (1993); *York v. Association of the Bar of the City of New York,* 286 F.3d 122, 125 (2d Cir.2002); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). Accordingly, the complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957) (footnote omitted). These principles are even more strictly applied where the plaintiff alleges civil rights violations, *see Hernandez,* 18 F.3d at 136; *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991), or where the plaintiff proceeds *pro se, see Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000). In considering a *pro se* complaint, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. The Board of Education of the State of New York,* 287 F.3d 138, 146 (2d Cir.2002); *see also Cruz,* 202 F.3d at 597.

A. *Sufficiency of the Pleadings*

**3** Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement is intended only to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47. The United States Supreme Court recently held that, to comply with Rule 8(a)(2), a plaintiff in an employment

Not Reported in F.Supp.2d, 2003 WL 22953165 (S.D.N.Y.), 27 NDLR P 106

(Cite as: 2003 WL 22953165 (S.D.N.Y.))

discrimination action need not plead specific facts establishing a prima facie case of discrimination. *Swierkiewicz v. Sorema,* 534 U.S. 506, 508 (2002). At the pleading stage, "before the reception of any evidence either by affidavit or admissions, ... [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id* . at 511 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

1. *Definition of "Disability"*

The ADA prohibits employment discrimination "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A "disability" is defined in part as "a physical or mental impairment that substantially limits one or more ... major life activities." 42 U.S.C. § 12102(2)(A). Under the EEOC regulations implementing the ADA, the term "major life activities" is further defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).[FN4] Other "major life activities" include "sitting, standing, lifting, [and] reaching." *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 870 (2d Cir.1998) (quoting EEOC's Americans with Disabilities Act Handbook I–27 (1992)). To be "substantially limited" means to be: (1) "unable to perform" a major life activity that an "average person in the general population can perform," or (2) "significantly restricted" in the "condition, manner, or duration" of performing a major life activity, as compared to an "average person in the general population." 29 C.F.R. § 1630.2(j)(1).

> FN4. The EEOC's regulations are accorded "great deference," since the agency is charged with administering the ADA. *Francis v. City of Meriden,* 129 F.3d 281, 283 n. 1 (2d Cir.1997).

The defendant contends that the plaintiff's pleadings are insufficient because Ms. Thompson fails to allege a "disability" within the meaning of the ADA. [FN5] In her Complaint, the plaintiff identifies her disability as "carpal tunnel syndrome" and other "back and neck" ailments. (Compl. at 3). Under the ADA, these conditions qualify as "physical impairments," as they are "physiological disorder[s]" affecting the "musculoskeletal" system. 29 C.F.R. § 1630.2(h).

FN5. I note that proof of a "disability within the meaning of the ADA" is an element of the prima facie case for employment discrimination based on disability. *See* *Ryan,* 135 F.3d at 870 (citations omitted). While the failure to establish a prima facie case may not be grounds for dismissal, *see* *Swierkiewicz,* 534 U.S. at 508, the ADA itself requires proof of disability as it is defined therein, and a failure to offer facts in support of this element would require dismissal because, in the absence of a qualifying disability, "no set of facts ... would entitle [the plaintiff] to relief." *Conley,* 355 U.S. at 45–46. Under the ADA definition of "disability," merely pleading a physical impairment without specifying that it "substantially limits" a "major life activity" may be insufficient to state a claim for relief. *See, e.g.,* *Harewood v. Beth Israel Medical Center,* No. 02 Civ 5511, 2003 WL 21373279, at *1, 5 (S.D.N . Y. June 13, 2003) (citing *Swierkiewicz,* 534 U.S. at 508; *Sacay v. Research Foundation of the City University of New York,* 44 F.Supp.2d 496, 501–02 (E.D.N.Y.1999) (collecting cases); *cf. Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184, 195 (2002) (carpal tunnel syndrome is not per se disability without evidence of substantial limitation to major life activity); *Weixel,* 287 F.3d at 146–47 (under Title II of ADA, complaint is sufficient if it alleges: (1) disability within meaning of ADA, (2) plaintiff's qualification to receive benefit, and (3) denial of benefit because of disability). *Contrast* *Benjamin v. New York City Department of Health,* No. 99 Civ 12345, 2002 WL 485731, at *8 (S.D.N.Y. Mar. 29, 2002) (impairment alone sufficient in light of *Swierkiewicz* ); *Magee v. Nassau County Medical Center,* 27 F.Supp.2d 154, 162 (E.D.N.Y.1998) (impairment alone sufficient for *pro se* complaint).

While the plaintiff's pleadings do not specify the major life activity limited by her disability, they can be liberally read as alleging a limitation in the plaintiff's ability to work. For instance, the plaintiff states that work activities requiring excessive writing and sitting

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22953165 (S.D.N.Y.), 27 NDLR P 106

(Cite as: 2003 WL 22953165 (S.D.N.Y.))

"aggravated my Carpal Tunnel Syndrome and caused ... severe lower back, neck and shoulder pains and severe daily headaches." (6/9/03 Statement at 2). She also states that on one occasion in 1999, the daily headaches caused her to miss work for two weeks. (6/9/03 Statement at 3). Aside from working, the plaintiff states in her opposition papers that she is limited in "sitting, standing, lifting, ... [and] reaching," and in an attached medical report, she claims difficulties in performing "household chores or other manual activities." (Plaintiff's Opposition to Defendant's Motion ("Pl.Opp.") at 2 & Exh. 11). The plaintiff also alleges limitations in walking and provides specific examples. (Pl. Opp. at 2). These allegations clearly identify qualifying "major life activities" under the ADA.

**\*4** Moreover, the plaintiff alleges facts suggesting that she is "substantially limited" in performing the major life activities identified. For instance, the plaintiff states that, if she sleeps on her back or right side, she has difficulty walking the following morning. (Pl. Opp. at 2). She also states that she has difficulty walking after sitting continuously for several hours, and that she has difficulty climbing two flights of stairs. (Pl. Opp. at 2). These allegations are supported by a medical report that the plaintiff attached to her complaint. (Report of William L. King, M.D ., attached as Exh. D of Exh. 2i to 6/9/03 Statement). Regardless of whether the plaintiff will "ultimately prevail," _Scheuer,_ 416 U.S. at 236, in proving that these limitations are significant as compared to the "average person in the general population," 29 C.F .R. § 1630.2(j)(1), her allegations state a claim to that effect and are sufficient to give fair notice to the defendant.[FN6]

> [FN6.] In light of the plaintiff's allegations regarding her ability to walk, I need not reach the issue of whether her alleged work restrictions are "substantial" because she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

2. _Hostile Work Environment_

The defendant also contends that the plaintiff's allegations concerning "harassment or other discriminatory conduct" are insufficient as they fail to allege a causal connection between the alleged conduct and the plaintiff's disability. (Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint ("Def.Memo.") at 10 n. 7). Several courts in this district have recognized ADA claims based on harassment or a "hostile work environment." _See, e.g., Scott v. Memorial Sloan–Kettering Cancer Center,_ 190 F.Supp.2d 590, 599 (S.D.N.Y.2002) (equating ADA standard for hostile environment claims to that of Title VII); _Disanto v. McGraw–Hill, Inc./Platt's Division,_ No. 97 Civ. 1090, 1998 WL 474136, at \*5 (S.D.N.Y. Aug. 11, 1998). As the ADA only prohibits discrimination "because of" a disability, 42 U.S.C. § 12112(a), proof of causation is required. However, in meeting the pleading requirements of Rule 8(a), a plaintiff need not "append to each allegation of harassment the conclusory declaration 'and this was done because of my [disability].' " _Gregory v. Daly,_ 243 F.3d 687, 694 (2d Cir.2001). "[W]hat is needed is the allegation of factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment because of her [disability]." _Id._

In her pleadings, the plaintiff cites numerous instances of "telephone harassment" and other verbal abuse that she allegedly received from her co-workers. (6/9/03 Statement at 1–4). With respect to the content of the verbal harassment, the plaintiff states that she was called names such as "gay," "Jap," and "tramp," none of which appears to make direct reference to her disability. The plaintiff states that on one occasion, the harassment began when she complained about "coworkers playing loud music." (6/9/03 Statement at 2). In her most recent allegations, the plaintiff states that a co-worker stole her ergonomic chair, headset, and computer mouse, all of which were items provided to accommodate her carpal tunnel syndrome. (6/9/03 Statement at 5).

**\*5** While this case presents a close call, the plaintiff's allegations are sufficient to permit the inference that the alleged incidents of harassment were motivated by her disability. It is not necessary that the harassing words or conduct refer specifically to the plaintiff's handicap. _See Gregory,_ 243 F.3d at 694–95 (comment that plaintiff was "stupid and incompetent" could demonstrate harassment

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22953165 (S.D.N.Y.), 27 NDLR P 106

(Cite as: 2003 WL 22953165 (S.D.N.Y.))

based on sex). Moreover, the later incidents do appear related to the plaintiff's disability. When considering the long history of disputes between the plaintiff and her employer concerning accommodations for her carpal tunnel syndrome, it cannot be said the plaintiff can show "no set of facts," *Conley,* 355 U.S. at 45, to prove that her disability was related to the alleged harassment.

3. *Retaliation*

It is unclear whether the defendant, by its reference to "harassment or other discriminatory conduct" (Def. Memo at 10 n. 7), also seeks to challenge the plaintiff's retaliation claim as inadequately alleging facts to support causation. The pleadings, in any case, are explicit in this regard. The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this [Act]." 42 U.S.C. § 12203(a). A retaliation claim can be premised on an individual's request for reasonable accommodations. *See Sacay,* 44 F.Supp.2d at 504. Here, the plaintiff alleges that in June 1998, she requested a transfer to prevent a further aggravation of her carpal tunnel syndrome. (6/9/03 Statement at 2). She states that, "in retaliation," she was then assigned to the Investigation Unit and given job tasks that only worsened her condition. (6/9/03 Statement at 2).

In addition, while the defendant is correct that this Court lacks jurisdiction over claims for workers' compensation benefits, *see* N.Y. Workers' Comp. § 11, the plaintiff's pleadings can be liberally construed as alleging that the employer's interference with her receipt of benefits, as well as its rejection of her union grievance, resulted from the plaintiff's requests for accommodation or the complaints she filed with government agencies. For instance, the plaintiff alleges that during her assignment with the Investigation Unit, she made four transfer requests (which were denied), then filed a charge with the NYSDHR. (6/9/03 Statement at 2). Subsequently, Philip Dobbs, the Branch Chief of the Investigation Unit, denied the plaintiff use of her sick leave benefits to cover a two-week absence, a dispute that became the subject of her union grievance. (6/9/03 Statement at 3). Mr. Dobbs also commented to the plaintiff that she had "stepped on someone [sic] toes high up." (6/9/03 Statement at 3). Additionally, the plaintiff alleges that she was denied payment for her chiropractor's bills when she filed her

second workers' compensation claim in 2002. (6/9/03 Statement at 5). However, she experienced no such denial of coverage when she filed her the first claim in April 1998 before transferring to the Investigation Unit. (6/9/03 Statement at 2). FN7

> **FN7.** While the plaintiff does not specify the manner in which her employer allegedly interfered with her receipt of benefits, the timing of the second denial of coverage is sufficient to raise the inference that some form of interference did occur. The defendant, in any case, does not raise any issue other than causation in challenging the sufficiency of the pleadings with respect to the retaliation claim.

**\*6** Broadly construed, the pleadings therefore state sufficient facts to support the causation element of the plaintiff's retaliation claim. The plaintiff's allegations pertaining to her workers' compensation claim and union grievance should be construed as part of this claim. *See, e.g., Muller v. Costello,* No. 94 Civ. 842, 1996 WL 191977, at *6 n. 16 (N.D.N.Y. April 16, 1996) ("discriminatory manipulation of [plaintiff's] employment benefits," including sick leave and workers' compensation, can form basis of ADA retaliation claim).

B. *Timeliness*

The defendant contends that certain portions of the Complaint should be dismissed because they are time-barred. As a prerequisite to a civil suit under the ADA, a plaintiff is required to file a charge with the EEOC within 300 days of the alleged unlawful acts. *See* 42 U.S.C. §§ 2000e–5(e)(1), 12117(a). Here, the plaintiff filed a charge with the NYSDHR on February 16, 1999. FN8 Accordingly, the defendant argues that any claims based on acts occurring more than 300 days prior to that date—i.e., prior to April 22, 1998—should be dismissed.

> **FN8.** The defendant concedes that the plaintiff's charge was accepted by the NYSDHR on behalf of the EEOC. (Def. Memo. at 11 n. 8).

However, the plaintiff's pleadings do not appear to allege any pre-April 22, 1998 acts pertaining to her failure-to-accommodate or retaliation claim. The plaintiff

Not Reported in F.Supp.2d, 2003 WL 22953165 (S.D.N.Y.), 27 NDLR P 106

(Cite as: 2003 WL 22953165 (S.D.N.Y.))

states that she was hired by the defendant on November 13, 1995, and that she worked without an "ergonomic workstation" at her first work assignment. (6/9/03 Statement at 1). She does *not* allege that she made any requests for accommodations during her first assignment, nor does she allege that the defendant refused such requests or retaliated against her for making them. Instead, the plaintiff states that she was diagnosed with carpal tunnel syndrome on March 11, 1998, and appears to allege that she requested accommodations at that time. (6/9/03 Statement at 1). Accordingly, no portion of the failure-to-accommodate or retaliation claim can be dismissed on the basis of untimeliness.FN9

> FN9. Despite the absence of any factual allegations, the plaintiff indicates in her form complaint that the defendant's discriminatory conduct commenced in February 1998. (Compl. at 3). To the extent that the defendant wishes to clarify whether any of the plaintiff's claims arise from acts occurring prior to April 22, 1998, it can do so through the use of interrogatories or deposition. *See Burch v. Beth Israel Medical Center,* No. 02 Civ. 3798, 2003 WL 253177, at *6 (S.D.N.Y. Feb. 5, 2003).

With respect to her hostile work environment claim, the plaintiff alleges that she was the victim of "telephone harassment" during her first work assignment, which lasted from November 13, 1995 to January 5, 1997. Under *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 118 (2002), a plaintiff asserting a hostile work environment claim need only file a timely EEOC charge with respect to any one act that forms a part of the claim. As a consequence, the entire period of the claim, including acts falling outside the filing period, may be considered for purposes of determining liability. *Id.* at 117. Here, the plaintiff alleges numerous acts of harassment that occurred after April 22, 1998, and as to these acts, her EEOC charge was timely. Accordingly, the allegations of "telephone harassment" occurring prior to April 22, 1998 should be considered as part of her hostile work environment claim.

C. *Suable Entities*

Finally, the defendant contends that the Complaint should be dismissed because it names as a defendant only the New York City Department of Probation, which is not a suable entity. New York City Charter § 396 states that "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency." This provision precludes employment discrimination actions brought against city agencies. *See, e.g., Manessis v. New York City Department of Transportation,* No. 02 Civ. 359, 2003 WL 289969, at *1 n. 2 (S.D.N.Y., Feb. 10, 2003) (ADA action); *Weiss v. The City of New York,* 96 Civ. 8281, 2001 U.S. Dist. LEXIS 15404, at *19 (S.D.N.Y. May 7, 2001) (same); *but see Robinson v. City of New York,* No. 00 Civ. 0426, 2002 WL 188353, at *2 (S.D.N.Y. Feb. 6, 2002) (police department can be sued in its role as employer in Title VII action). In consideration of the plaintiff's *pro se* status, the Complaint should be deemed amended to name the City of New York as the sole defendant. *Manessis,* 2003 WL 289969, at *1 n. 2.
*Conclusion*

**\*7** For the reasons set forth above, I recommend that the defendant's motion to dismiss be denied and that the Complaint be deemed amended to name the City of New York as the sole defendant. Pursuant to 28 U .SC. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, Room 1340, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.
S.D.N.Y.,2003.

Thompson v. New York City Dept. of Probation
Not Reported in F.Supp.2d, 2003 WL 22953165 (S.D.N.Y.), 27 NDLR P 106
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2012 WL 5464467 (E.D.Cal.)

(Cite as: 2012 WL 5464467 (E.D.Cal.))

Only the Westlaw citation is currently available.

United States District Court,

E.D. California.
Amanda U. AJULUCHUKU, Plaintiff,
v.
MACY'S, Defendant.
No. 2:12–cv–1855 GEB DAD PS.

Nov. 7, 2012.

Amanda U. Ajuluchuku, Beverly Hills, CA, pro se.

*FINDINGS AND RECOMMENDATIONS*

DALE A. DROZD, United States Magistrate Judge.

**\*1** Plaintiff Amanda Ajuluchuku is proceeding in this action pro se. This matter was referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). Plaintiff has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

Plaintiff's in forma pauperis application makes the showing required by 28 U.S.C. § 1915(a)(1). However, a determination that a plaintiff qualifies financially for in forma pauperis status does not complete the inquiry required by the statute. " 'A district court may deny leave to proceed in forma pauperis at the outset if it appears from the face of the proposed complaint that the action is frivolous or without merit.' " Minetti v. Port of Seattle, 152 F.3d 1113, 1115 (9th Cir.1998) (quoting Tripati v. First Nat. Bank & Trust, 821 F.2d 1368, 1370 (9th Cir.1987)) See also Smart v. Heinze, 347 F.2d 114, 116 (9th Cir.1965) ("It is the duty of the District Court to examine any application for leave to proceed in forma pauperis to determine whether the proposed proceeding has merit and if it appears that the proceeding is without merit, the court is bound to deny a motion seeking leave to proceed in forma pauperis."). Moreover, the court must dismiss an in forma pauperis case at any time if the allegation of poverty is found to be untrue or if it is determined that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

monetary relief against an immune defendant. See 28 U.S.C. § 1915(e)(2). A complaint is legally frivolous when it lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227–28 (9th Cir.1984). Under this standard, a court must dismiss a complaint as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327; 28 U.S.C. § 1915(e).

To state a claim on which relief may be granted, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In considering whether a complaint states a cognizable claim, the court accepts as true the material allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).

The minimum requirements for a civil complaint in federal court are as follows:

**\*2** A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed.R.Civ.P. 8(a).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 5464467 (E.D.Cal.)

(Cite as: 2012 WL 5464467 (E.D.Cal.))

Here, plaintiff's amended complaint does not contain a short and plain statement of plaintiff's claim showing that she is entitled to relief. In this regard, the amended complaint merely alleges in conclusory fashion that plaintiff has been discriminated against based upon her race, skin color and disability. (Am.Compl.(Doc. No. 4) at 2.)

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a) (1). Though the amended complaint identifies plaintiff's race, skin color and disability, it does not allege any facts explaining how defendant discriminated against plaintiff based thereon.

Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a complaint must give the defendant fair notice of the plaintiff's claims and must allege facts that state the elements of each claim plainly and succinctly. Fed.R.Civ.P. 8(a)(2); Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir.1984). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 557). A plaintiff must allege with at least some degree of particularity overt acts which the defendants engaged in that support the plaintiff's claims. Jones, 733 F.2d at 649.

Moreover, the amended complaint does not allege that defendant Macy's employed plaintiff and, in fact, from its allegations it would appear that defendant did not do so. Title VII protects only employment relationships: "The operative term for purposes here is 'employment.' That is, the clause presumes the existence of an employer-employee relationship ... in contrast to, for example, an independent contracting relationship." Bender v. Suburban Hosp. ., Inc., 159 F.3d 186, 189 (4th Cir.1998). There must be some interference with an employment relationship, as opposed to an independent

contractual relationship, for Title VII protections to apply. Mitchell v. Frank R. Howard Mem. Hosp., 853 F.2d 762, 767 (9th Cir.1988). Here, plaintiff's amended complaint alleges simply that defendant's salespeople refused to give plaintiff a gift set she believed she was entitled to after she purchased more than $24 worth of Elizabeth Arden's Red Door perfume. (Am.Compl.(Doc. No. 4) at 2.)

**\*3** Finally, to the extent plaintiff purports to state a claim under the Americans with Disabilities Act ("ADA") plaintiff in her amended complaint fails to allege that she is disabled as defined by the ADA. The ADA defines a disability as (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Plaintiff's amended complaint does not allege facts establishing any of those elements. Nor does the amended complaint allege what provision of the ADA plaintiff purports to sue under or any valid basis for an ADA claim since plaintiff does not allege any connection between her purported disability (recurring deafness and dizziness) and the conduct that she alleges occurred at defendant's store.

Thus, plaintiff's amended complaint fails to state a claim on which relief may be granted. The court has carefully considered whether plaintiff may amend her complaint to state a claim upon which relief can be granted. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir.1988). See also Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir.1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments). In light of the obvious deficiencies noted above, the court finds that it would be futile to grant plaintiff leave to amend.[FN1]

> FN1. "Moreover, the court notes that this complaint appears to be one of several hundred frivolous complaints that plaintiff has filed all over the country." Ajuluchuku v. Apple, Inc., No. 2:12–cv–2494–GEB–EFB–PS, 2012 WL 5035944, at \*3–4 (E.D.Cal. Oct.17, 2012).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 5464467 (E.D.Cal.)

(Cite as: 2012 WL 5464467 (E.D.Cal.))

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's July 13, 2012 application to proceed in forma pauperis (Doc. No. 2) be denied;

2. Plaintiff's September 24, 2012 amended complaint (Doc. No. 4) be dismissed without leave to amend; and

3. This action be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, plaintiff may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. *See Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

E.D.Cal.,2012.

Ajuluchuku v. Macy's
Slip Copy, 2012 WL 5464467 (E.D.Cal.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants. [1]**

1 Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided**
**May 23, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P.*

*4(k)*. Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*

[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*

[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*

[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*

[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*

[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*

[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1)*.

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a)*.

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

**COUNSEL:** [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

JUDGES: ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

OPINION BY: ROSEMARY S. POOLER

OPINION

*MEMORANDUM-DECISION AND ORDER*

INTRODUCTION

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

> 2   Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

> 3   Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8]   The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

> 4  The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.
>
> 5  The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1) and 4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The

state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983).* These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> 6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332*. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a)*. *Section 1391(b)* provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

## III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25]

of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] *Civ. No. 94-C944 (D.D.C. 1994), Pourzandvakil v. Doty (E.D.N.Y. 1993), Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d)*, holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point

at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE